SAMUEL, Judge.
This is an appeal by the plaintiff from a judgment dismissing his suit against his former employer for total and permanent disability benefits under the Workmen’s Compensation Act.
*68 Plaintiff, 20 years of age at the time, was employed as a porter by the defendant, a drug store. Shortly thereafter, on November 4, 1964, he sustained a right inguinal hernia in the course and scope of his employment while lifting a heavy garbage can. He was seen by defendant’s physicians, Drs. Lyons, Baker and Paine, who recommended an operation which was performed by Drs. Lyons and Baker on November 13, 1964. He remained in the hospital for a period of nine days and thereafter returned to Dr. Baker for routine outpatient post-operative care.
After an examination on January 14, 1964 Dr. Baker felt plaintiff should try to return to work and issued him a slip therefor effective January 18, 1965. However, plaintiff complained of pain and a “funny feeling” in the area of the incision and for that reason did not go back to work. He returned to Dr. Baker on three occasions during the following month of February. Because of plaintiff’s complaints Dr. Baker obtained another opinion, sending him to Dr. J. Kelley Stone. Dr. Stone examined plaintiff on February 19, 1965 and reported he could find no reason why plaintiff should not return to work; he was unable to find any medical condition to account for the complaints of pain or of a “funny feeling”. Dr. Baker then issued a second return to work slip effective March 1, 1965. Plaintiff did not return and compensation • payments were discontinued on that date. Plaintiff also was seen by his own physician, Dr. James T. Nix.
The question presented is whether plaintiff had recovered from his hernia operation, and was able to return to the type of work he was performing before that operation, on March 1, 1965. Plaintiff contends he was and is unable to work due to pain caused by a keloid formation with nerve involvement resulting from the operation and is thus totally and permenently disabled under the compensation act. It is undisputed that the operation was successful in all other respects.
Five witnesses testified at the trial: Plaintiff, Drs. Paine, Baker and Nix, and Steve Stellis, and officer manager of a local chemical company. In addition, the written report of Dr. Stone was admitted in evidence without objection. We have already discussed the contents of that report.
Plaintiff testified: The hernia repair was still bothering him; it hurt, off and on, “like a pain” in the area of the incision itself and the pain is worse when and if he does heavy work. While working for the defendant his position required, among other things, that he put stock on the shelves, move boxes and other similar objects, sweep the premises and assist in the unloading of trucks. He was not working at the time of trial; but he had tried to do a little work following the discharge on March 1, 1965. The only type of work he had done since the operation consisted of jobs at a car wash and this he had done only occasionally. The pain was severe enough to interfere with that work and he had never held a job long.
Dr. Paine testified a keloid is an excessive piling up of the healing or scar tissue. Occasionally there is some nerve involvement in the keloid formation and if a nerve is trapped in the scar tissue the tissue puts pressure on the nerve resulting in what is usually a burning ot tingling sensation or a feeling of numbness. The extent of the sensation depends on' the size and location of the nerve. However, most keloids do not involve nerves and, while a major keloid could cause discomfort, ordinarily it would not prevent a person from working. He found nothing in the records of his examinations of the plaintiff which would indicate a keloid with nerve involvement. He was of the opinion that plaintiff was able to return to work.
Dr. Baker, a general surgeon, testified: During the month of February, 1965 plaintiff complained of numbness medial to the incision and some sensation in the area of the incision described by plaintiff as a *69 “funny feeling” involving pain. Plaintiff did have a small keloid, a slight elevation at the line of the incision. He, the doctor, felt the numbness and the sensation were due to the division by the incision of some small, subcutaneous nerves, a frequent result whenever the skin is divided, and perhaps from the division of some of the branches of the inguinal nerve. No large nerves were involved. The kind of surgery discomfort complained of by plaintiff is not serious, gradually wears off, and the peripheral nerves regenerate. He was of the opinion there was no reason why plaintiff should not have returned to work either on January 18 or March 1 of 1965.
Dr. Nix, also a general surgeon, saw plaintiff on four occasions in February, March, August and November of 1965. Plaintiff complained to him of an intermittent, sharp pain in the right groin area. The keloid was in the middle one-third of the four inch operative scar. He examined plaintiff but did not perform apparently extensive tests involving injections, feeling this should not be done because of the court involvement; to a very large extent he relied on what plaintiff told him. He was of the opinion that plaintiff suffered from a neuralgia of the ilioinguinal nerve, a not uncommon complication in hernia surgery, and that the keloid, which might be a sequella of the surgery, could be either related or unrelated to that condition. Although resulting disability or its absence would depend on the individual’s threshold for pain, he felt that plaintiff was disabled from working at the time he saw him. On cross examination Dr. Nix testified that if plaintiff in fact had been working when the examinations were made, he would not say plaintiff was disabled from doing the type of work he was performing at that time.
Steve Stellis, an officer manager of Thompson Hayward Chemical Company, testified that his company’s records reflect that it had employed plaintiff as a warehouseman from June 10, 1965 through September 3, 1965, when there was a short layoff due to lack of work, and from September 21, 1965 until November 11, 1965. With the exception of a few days when he came in one-half hour late, plaintiff worked full time, and a full eight-hour day, during these periods of employment. Plaintiff’s position as warehouseman involved sweeping and chiefly required the loading and unloading of trucks, including cargoes of bags weighing 50 to 100 pounds each and of drums. His application for employment with Thompson Hayward dated June 1, 1965 stated he had been employed by a super market from 1964 to 1965, keeping stock on shelves, and from April to June by a car wash.
Our settled law is that the plaintiff in a compensation case must establish his claim to a legal certainty and by a reasonable preponderance of the evidence. Williams v. New Orleans Paper Box Company, La.App., 185 So.2d 109 and cases cited therein.
It is also settled that an unskilled common laborer, such as the present plaintiff, is entitled to compensation under the act when, although physically able to work he cannot do so without suffering substantial pain and discomfort. Flowers v. E. M. Toussel Oil Co., La.App., 190 So.2d 147. As this court said in Flowers, at page 151:
“ * * * Where it is not shown that performance of the work would either be injurious to his health or increase the hazards to the health of himself and his fellow workers, in order to constitute disability the pain must be sufficiently intense as to prevent the worker from carrying out his job or some of the functions thereof; and the question of whether a claimant is unable to work without pain sufficiently severe as to be considered disabling is one of fact. * * * ”
In the instant case plaintiff has failed to establish his claim, that he is unable to work because of pain resulting from the operation, to a legal certainty and by a reasonable preponderance of the evidence. The clear preponderance of the evidence is *70 to the contrary. The only evidence supporting his contention, even in part, is his own testimony. In that testimony he denied having worked in similar positions since the surgery; but he presented no other evidence to contradict the testimony of Stellis. We are satisfied that following the surgery he did perform extensive work similar to and heavier than that which he had been performing in his employment by the defendant. All of the medical evidence contradicts plaintiff’s contention; and the record contains no evidence other than medical and the testimony of plaintiff and Stellis. Even the testimony of his own witness, Dr. Nix, is to that effect. Dr. Nix conceded that plaintiff could not have been disabled from doing work which he was actually performing at the time of that doctor’s examinations and during the latter part of that time, unknown to Dr. Nix, he was doing similar and heavier work.
For the reasons assigned, the judgment appealed from is affirmed.
Affirmed.